We'll move next to argument in number 21, 111, Oliver v. Penny. The appellant is here in the courtroom and the appellee is participating remotely, so she'll appear on the screen that's at the podium. But let's begin with Ms. Oliver. Yes, thank you very much. I'm sorry, I'm a little bit nervous, so please bear with me. With regard to this case, there is no First Amendment retaliation claim in 115444. As the Attorney General seems to suggest, neither Michael Vorforte nor Clay Lodeweiss are members of the New York State Police. They are in charge of the Governor's Office of Employee Relations. And they use their legal knowledge as heads of these agencies to work hand in hand with the defendants and the co-conspirators who were heading the New York State Police at that time. Thomas Capisa, John Harford, Kevin Gagen, Lois Goland, Joseph D'Amico, and Jason Hughes. They withheld my grievances. They withheld my improper practice charges, which were never heard. While they manufactured the false instruments that they used to secure my illegal and wrongful termination from the New York State Police. I honorably served the agency for nearly 20 years. I was at the top of every station and every unit I ever worked at. I gave it my life. I'm a combat veteran. I've served over 20 years in the United States Army and two decorated combat tours. And this is what they did to me. The retaliation by the, I'm sorry, I have to go back. The defendants in this case, they manufactured false instruments. They were used to secure my illegal termination from the New York State Police. And it was because of the complaint that I filed against a male supervisor in 115444. At the time, the political environment was such that there was nothing you could do to a male supervisor, no matter what they did. And it didn't just happen to me. It happened to Seamus Lyons and Noel Nelson, my friends. And they recently, finally, after nine years, got in front of, and it's the same actors. It's Kevin Gagan, Joseph D'Amico, John Hartford, Thomas Kapisa. They made them leave the job, disgraced that they did something wrong when they didn't. They finally got a full and fair opportunity to present their case, and they won. God, praise God, they won. Ms. Oliver, can I ask a question? Because you submitted that article with a motion this morning that had to do with disqualifying the district court. And I wasn't entirely sure whether the things that you were talking about in the motion were talking about the district court in the 2015 case, or the district court in this case, or whether it was the same court. It's the same court, Your Honor. And I think part of the problem is that Kevin Gagan, who is one of the actors in this case, paid the Harris Beach Law Firm. He signed the contract allowing the New York State Police to pay the Harris Beach Law Firm over $1.2 million in my case to make it go away. What they did to me is so, it's so wrong. But they're trying to keep me from presenting this case. I have the evidence. I have everything I need. But they keep blocking me. They keep stopping me from talking. They keep denying me the ability to present this case. This case differs, Your Honors, because while the case in 15444 is the male supervisors who were retaliating and harassing and discriminating against me for complaining, for letting the agency know what was happening, I was doing the right thing. But what they did is they, on May 29, 2014, myself as an investigator in the New York State Police and a trooper, we provided a transport. It was a simple transport for an interview. It was part of the performance of my duties. I documented everything. I had my supervisor's permission. I was done in maybe, I don't know, an hour or two. Afterwards, the trooper asked me to submit a letter asking for a commendation letter for him. He was trying to get promoted. I did it because he's my friend, so I submitted it. When I did that, staffers working under Daniel Penny went to the supervisors in 15444 and said file accusations against her. Say that she did this. And they did it. And I was so angry because they wouldn't stop retaliating against me. And so I told IAB staffers under Daniel Penny, I said, I have proof that they lied. I had documents that would have proven that these supervisors now were lying. So what they did is they went to my new captain and they said, okay, you're going to say that she disobeyed you. Don't tell her how she disobeyed you, but you'll say that she disobeyed you. So he did. And I said, sir, I don't know what did I do. I would never disobey you. He couldn't tell me. I then received a notice saying we're going to suspend you for 30 days because of what you did. I said, I don't even know what I did. I didn't do anything wrong. I went to a hearing. It's my right in accordance with the rules and regulations to ask for a hearing to challenge a 30-day suspension. And I'm terminated from the New York State Police immediately. And I never did anything wrong. And so just again to make sure, because procedurally there's a lot going on here. Yes, ma'am. I'm assuming that the things that you've just described were also the subject of some of the evidence that came out in the trial in 2015? No, ma'am. I wasn't allowed to present any of it. In fact, what had happened is I told back in 2019 I filed for injunctive relief because after I deposed Joseph D'Amico, after I deposed one of the hearing board members, they told me they never wrote the hearing board's findings. It was written by the defendants in this case. The defendants also wrote Joseph D'Amico's instrument that he signed. Joseph D'Amico admitted he never performed any of the legal duties he was required to perform as the final arbiter. He signed off on something handed to him by Tom Capisa. They signed these documents. They knew they were false instruments. They submitted them to the appellate court. The appellate court didn't know at the time. I couldn't argue that they, because I hadn't deposed Joseph D'Amico yet. I didn't have a full and fair opportunity to litigate these issues. They didn't come up until discovery. When they came up, I immediately sought injunctive relief. And in the decision of the district court judge, initially, this is what she says and this is what you receive. Because plaintiff did not raise her discrimination claims in the state proceeding, and because there is no other indication that the state court considered and rejected these claims, collateral estoppel does not preclude plaintiff from making a discrimination challenge in the instant case. Thus, plaintiff's retaliatory discharge claims are not precluded by the Article 78 proceeding. But then, afterwards, you guys probably got this. So you're thinking, well, she's going to be able to hear her retaliation and her discrimination claims related to her termination. But over a year later, in a summary judgment, it says, Here, Superintendent D'Amico adopted the hearing board's findings and recommendations and terminated plaintiff's employment. The appellate division, fourth department, confirmed Superintendent D'Amico's determination, concluding that the factual findings of the hearing board concerning petitioner's conduct are supported by substantial evidence. Thus, the reasons for plaintiff's termination were actually and finally resolved in the prior adjudication. There is no indication that plaintiff did not have a full and fair opportunity to litigate the issues before the hearing board and the appellate division. She never allowed me, she was never going to allow me to present my retaliation claims with regard to my termination, and she didn't. I wasn't allowed to talk about it. In fact, she told me the only four things that were allowed to be heard at this jury trial that took place was my transfer, my removal of my undercover duties, and my transfer to Troop A. And yet, even with that, she said you can only ask the defendant certain questions. So is that, the 2015 case in the jury trial, is that now coming up to us on appeal under a separate document? Yes, ma'am. Okay, so some of these arguments you'll be making in that appeal. I'm not going to stop until there's justice in this case. But my contention is, in this case, your honors, you cannot say that I had a full and fair opportunity to litigate this because we didn't have it until Joseph D'Amico admitted that the hearing board's findings didn't come from the hearing board, they came from these defendants. The superintendent's notice didn't come from the superintendent, it came from these defendants. Okay, Ms. Oliver, I think we have that argument. You've reserved time for rebuttal, so we'll hear from you again after hearing from the appellate. So we're going to hear now from the appellee, Ms. Ettinger. I think you're on mute, Ms. Ettinger. Do we have sound? Thank you. Thank you very much. Good afternoon, your honors. Laura Ettinger for the state appellees. The district court properly dismissed what remained of the second amended complaint. Plaintiff had three opportunities to clarify her claims against the remaining defendants, and she failed to do so. As the court is aware, there are really, analytically, two sets of claims in this, what remained in the second amended complaint. And the first set are those that are duplicative of the claims that are at issue or that were at issue in the 2015 proceeding, which has now been completed. And those involve the plaintiff's transfer, the investigations, the claims regarding the investigation of her gender discrimination complaints, the disciplinary action that led to her termination, and the search of her home after her termination. All of those facts are the same underlying facts in this proceeding as in the 2015 proceeding. It's true that the defendants here are not the same defendants at issue in the 2015 proceeding. But under this court's case law, there is privity. One of the defendants in the earlier action is the New York State Police itself with respect to Title VII claims. And those related claims under the Equal Protection Clause are brought against New York State Police employees in this action. Ms. Eslander, I'm understanding that the distinction that appellant is making is that, in the first case, these are cases against supervisors and people for the immediate surroundings. But we've got this separate body of, I'll say, misconduct, and misconduct by lawyers or people in various positions in connection with various state administrative proceedings that may be ancillary to the actual termination in some cases. Why isn't that sufficiently distinct from the heart of the allegations in 2015 to allow that to proceed as a separate action? Well, the underlying facts are really the same. The allegations, she amended her complaint in the 2015 action in March 2016. That was her second amended complaint. And in that complaint, there are also allegations concerning the Article 78 proceeding and the termination proceeding. So the facts in the 2015 litigation, because of the amended complaints, do correspond with the allegations here. And there are two additional independent reasons for affirming the dismissal of those claims. As the district court found, the facts underline the retaliation claims. The court didn't find that the retaliation claims that she was collaterally estopped from pursuing retaliation claims because of the Article 78 proceeding. The court found that the issues underlying those retaliation claims, to some extent, were precluded under the doctrine of issue preclusion because she litigated the correctness of her termination and the correctness of the charges in the Article 78 proceeding. So let me ask a question about that. In the Article 78 proceeding, wouldn't the standard have been whether there was substantial evidence to support the termination decision? Yes, that is the standard in the Article 78. And in a wrongful termination case, wouldn't the standard be whether it's more likely than not that the termination was wrongful under whatever standard you're applying? Yes, but there were factual findings in the Article 78 that the allegations against her were supported by the evidence. So it's not a claim preclusion argument? It's not claim preclusion. It's an issue preclusion argument. And for a third reason, the court can also find, as the district court did here, that those claims also simply, there was a failure to state a claim in the complaint itself. With respect to the defendants named in this action, there really was no evidence that any of their actions were prompted by gender discrimination, as the district court found. In addition, the retaliation claim against Penny, who was the director of the Internal Investigation Unit, she failed to allege any adverse action. She claims that somehow Penny was retaliated by ordering her transfer, but the factual allegations she includes in the complaint actually indicate that her supervisors were responsible for that transfer. So there simply was no adverse action to support a retaliation claim against Penny. And the only allegation against the lawyers with the state police, Capisa, Golan, Hughes, and Hartford, is that they somehow filed false charges against her. But again, other than that conclusory allegation, the actual allegations in the complaint indicate that there were supervisors and colleagues who were manufacturing claims, allegations against her for the administrative action. So there simply is no basis for those claims. And the second set of claims involved conduct that occurred after she was terminated, and with respect to those claims, again, there's no evidence that there was, that any of the actions were motivated by gender discrimination. And there was no adverse action for a retaliation claim because there was no action that took place after her termination that affected her employment. So for all of those reasons, dismissal of the complaint was proper. There is this other 2015 action that is now concluded that can be appealed against the actual alleged harassers and their supervisors. Unless the court has any other questions, we would be happy to rely on our brief. Okay. Thank you, Ms. Ellinger. We're going to turn back to Ms. Oliver for one minute of rebuttal. Please. Your Honors, in 115444, if you look at Exhibit No. 52, which is under docket No. 290, and you look at Exhibit 49, the very duties, Stephen Negrelli got up and testified under oath and said that I worked in an intelligence unit. My only duties were to pass along and share information. I had no operational duties, and that's how I disobeyed him. The charges were that I disobeyed him, I lied when I said I didn't disobey him, and I lied again when it caused a record to be created that I said I didn't disobey him. Yet if you look at Exhibit No. 52, which is what I tried to give to the hearing board, they refused to accept it. Lois Golan and Jason Hughes wouldn't accept it because Stephen Negrelli is the one who personally assigned me to every search warrant, every raid for the FBI. I was doing the same duties I was performing when I was at my old unit. He didn't know that I had the documents. I brought him to the hearing to show that he was committing perjury against me, and they wouldn't take it because they didn't want it in the record. If you read his sworn testimony, he says she has no operational duties, she's strictly assigned to pass along information, and what she did on that day was to disobey me, and so I needed to be immediately terminated. That document shows you, he even says in the document, Gene, I understand you wanted to speak with me regarding these allegations or whatever. I can't talk to you at this time. No, because they had to wait and figure out what they were going to say. When I tried to present the documents in Exhibit 52 to show them, I'm doing the same duties I was doing before. I'm executing search warrants. I'm conducting transports. I'm targeting violent gangs. In fact, I was the one who was assigned to one of the teams and the Buffalo City Grill shooting suspects. I recovered a handgun there. I recovered ammunition. But none of that was allowed to be put in my evaluation because Stephen Negrelli, they had to lie. They were trying to have me fired for these false charges, and they had no other way to do it. So I gave the judge. The district judge had these documents. She never even looked at them. And when we talk about gender discrimination, I gave them document after document. A sergeant assaulted his girlfriend in the presence of his teenage daughter. He had the same penalty I was facing, a 30-day suspension. He went to a hearing, and he had it reduced to three days by the superintendent. But I, as a female, went to a hearing to challenge a 30-day suspension, and I'm immediately terminated from the New York State Police. And I had never been in trouble, yet he had repeatedly been in trouble. I gave the district judge copies of documents of males, drug driving arrests, Charles Middlebrooks, who I worked with at CNET, he beat up his mistress when he was drunk out with her. She refused to have sex with him. He choked her in the back seat of his car. She was so injured she had to go to the hospital. And yet, inside division, they issued an internal order of protection so he wouldn't get in trouble. There's a letter from Kevin Gagen to Charles Middlebrooks. He got three days suspension. And I'm fired from my job forever. Okay, Ms. Oliver, thank you. I think we have your argument. The case is submitted. And because that is the last argued case on our calendar for today, we are adjourned. Court stands adjourned.